## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

STEPHEN CHAVAULIER HENRY,

       Plaintiff,

v.                                 Case No.  5:17-cv-273-MCR/MJF

ROWE, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Stephen Henry, an inmate of the Florida Department of Corrections, proceeds *pro se* and *in forma pauperis* in this action brought under 42 U.S.C. § 1983, in which he alleges violations of his Eighth Amendment right to be free of cruel and unusual punishments.[1] Pending before this court is:

    (1)     "Defendants Nurse Burdick and Nurse Cooper's Motion to Dismiss Amended Complaint with Prejudice" (Doc. 30);

    (2)     "Defendants' Motion to Dismiss" (Doc. 39);[2] and

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[2] "Defendants' Motion to Dismiss" (Doc. 39) was filed on behalf of Assistant Warden May, Major Mayo, Supervisor Baker, and Lieutenant Loper.

(3)    "Amended Plaintiff's Reply to Defendant's Motion to Dismiss." (Doc. 41).

The undersigned respectfully recommends that Defendants' motions to dismiss be granted because the Plaintiff failed to exhaust his administrative remedies and failed to state a claim upon which relief may be granted. The undersigned also recommends that this action be dismissed with respect to three other Defendants who have not been served with Plaintiff's complaint. Because there are two substantial bases supporting dismissal, the undersigned does not address the Defendants' alternative arguments regarding qualified immunity and Eleventh Amendment immunity.

## I.    Background

### A.    <u>Procedural Background</u>

Plaintiff Stephen Chavaulier Henry ("Henry") filed his second amended complaint against the following nine defendants: [3] (1) Assistant Warden May; (2) Supervisor Baker; (3) Major Mayo; (4) Lieutenant Loper; (5) Sergeant Rowe; (6) Nurse Cooper; (7) Nurse Burdick; (8) Dr. Murray Baker; and (9) Johnny Pride. (Doc. 13). Excluding Dr. Murray Baker and Johnny Pride, all defendants were employed

---

[3] Henry omitted the first names of most of the Defendants. Because two Defendants share the surname "Baker," one will be referred to as "Supervisor Baker" and the other as "Dr. Baker."

at the Apalachee Correctional Institution when the events at issue occurred.[4] (*Id.* at 2-3). Dr. Murray Baker is a surgeon at Jackson Hospital in Marianna, Florida, and is not an employee of the Florida Department of Corrections ("FDOC"). Johnny Pride is a sanitation instructor employed at the Florida State Hospital by Air Mark Company. (*Id.*). On December 14, 2017, Magistrate Judge Gary R. Jones ordered service on some defendants, but he specifically ordered that Defendants Dr. Baker and Johnny Pride not be served because Henry had failed to allege sufficient facts to state a claim against those two defendants. (Doc. 15 at 1 n.1). Defendant Sergeant Rowe also was never served with the complaint.

### B.   Plaintiff's Allegations

The relevant facts are taken from Henry's verified second amended complaint and are assumed to be true for purposes of the motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (holding that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

In 2016, Henry was an inmate of the Apalachee Correctional Institution in Sneads, Florida. Sometime before November 23, 2016, Henry met with the Institutional Classification Team ("ICT"), which was comprised of Defendants

---

[4] Nurse Cooper and Nurse Burdick were employed at Apalachee Correctional Institution but were employed by a private firm under contract with the Florida Department of Corrections.

Warden May, Supervisor Baker, and Major Mayo. (Doc. 13 at 6, ¶ 1). The ICT assigns jobs to inmates. (*Id*.). The ICT assigned Henry to work at the Florida State Hospital mowing grass, trimming trees, and raking leaves. (*Id*.).

Henry suffers from Type 1 diabetes, which allegedly makes him sensitive to the heat and often causes his blood sugar to drop such that he sometimes requires medical attention. (*Id.* at 6, ¶ 2). Henry informed his ICT of his diabetes and the possible adverse consequences that could occur by working in the heat. (*Id*.). Nevertheless, the ICT did not alter Henry's work assignment. Henry made several sick-call requests in an effort to have medical personnel opine that he was medically disqualified from working in the heat, but no such medical opinion was obtained. (Doc. 13 at 6, ¶¶ 3-4).

On or about November 23, 2016, Henry was injured while operating a lawnmower on the grounds of the Florida State Hospital. (*Id.* at 7, ¶ 5). Henry lost control of the mower and crashed into a tree. (*Id*.). Henry alleges that various factors contributed to this crash: (1) he was disoriented as a result of his diabetes and the temperature (both the ambient temperature and the heat generated by the lawnmower); (2) his supervisor never properly trained him to use the lawnmower; (3) he was descending a slope; (4) the brakes failed to slow the lawnmower; and (5) the tread on the mower's tires was worn. (*Id.* at 7, ¶¶ 5-6). During the crash, Henry

stretched out his left hand to brace for the fall, and this caused a portion of one finger to be "crushed and severed." (Doc. 13 at 7, ¶¶ 5-6).

After the crash, medical personnel gave Henry a tetanus shot and an injection to ease the pain. (*Id.* at 7, ¶ 8). A prison physician examined Henry and determined that additional medical treatment was needed. Henry was then transported to Jackson Hospital in Marianna, Florida. (*Id.*). At Jackson Hospital, Defendant Dr. Murray Baker performed surgery. (*Id.* at 7, ¶ 9). Henry contends that the surgery was unsuccessful and that his injured finger is crooked and continues to be painful. (*Id.* at 8, ¶ 9). Once released from Jackson Hospital, Henry remained in the Apalachee Correctional Institution infirmary for four days. (Doc. 13 at 8, ¶ 10). The ICT team then assigned Henry to work as a houseman (*i.e.*, dorm cleaner). (*Id.*).

Henry contends that unnamed "medical personnel" at Apalachee Correctional Institution disregarded Dr. Baker's orders that Henry see a bone specialist and Dr. Baker for a follow-up visit. (*Id.* at 8, ¶ 11). Henry states that he is in constant pain and makes reoccurring visits to "medical" where he is often provided ibuprofen to address the pain. (*Id.* at 8, ¶ 12). Unnamed prison medical personal also performed another x-ray on Henry's previously broken finger. (*Id.*).

Henry alleges that the Defendants violated his rights under the Eighth Amendment of the United States Constitution by: (1) requiring him to perform work that created an unreasonable risk of injury and working conditions that were unsafe;

and (2) denying him proper medical treatment following the injury to his finger. (Doc. 13 at 8-9). Henry seeks: (1) a declaratory judgment that the Defendants violated his constitutional rights; and (2) an injunction that compels the Defendants to pay damages of $250,000. (*Id.* at 9).

### C.    The Defendants' Motions to Dismiss

On March 8, 2018, Defendants Nurse Burdick and Nurse Cooper filed a motion to dismiss the complaint. (Doc. 30). In their motion, Defendants Burdick and Cooper argue that: (1) Henry failed to state a claim upon which relief can be granted; (2) individual capacity claims are barred by qualified immunity; (3) official capacity claims are barred by the Eleventh amendment; and (4) Henry failed to exhaust his administrative remedies. (Doc. 30 at 1-2).

On May 18, 2018, Defendants May, Mayo, Supervisor Baker and Loper also moved to dismiss the complaint and set forth the same four arguments made by Burdick and Cooper. (Doc. 39).

On August 29, 2018, Henry filed his "Amended Plaintiff's Reply to Defendant's Motion to Dismiss." (Doc. 41).

## II.    Standard of Review

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. In applying that rule, the allegations of the complaint are considered to be true and are construed in the light most favorable to

the plaintiff. *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quotation and citation omitted).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that amount to nothing more than a "formulaic recitation of the

elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted).

Courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" and accordingly construe it "liberally." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted). Courts must not, however, "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69 (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.  Discussion

### A.  <u>Failure to Exhaust Administrative Remedies</u>

Defendants May, Mayo, Supervisor Baker, Loper, Burdick and Cooper move to dismiss Henry's complaint due to his failure to exhaust his administrative remedies. (Doc. 30 at 9-10; Doc 39 at 6-12).

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). "'[W]hen a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983

lawsuit.'" *Bryant v. Rich*, 530 F.3d 1368, 1372-73 (11th Cir. 2008) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)).

Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court; and, second, it promotes efficiency in that claims generally can be resolved more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88-89, 126 S. Ct. 2378, 2384-85 (2006).

To serve these ends, "exhaustion in cases covered by § 1997e(a) is now mandatory . . . ." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002); *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001) (noting that the PLRA requires "procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"). The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the administrative process. *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007) (quoting *Woodford*, 548 U.S. at 88,

126 S. Ct. at 2384). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.* "[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner*, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.*

"First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make

specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74). A defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*; *see Jones*, 549 U.S. at 216, 127 S. Ct. at 921 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); *Dixon v. United States*, 548 U.S. 1, 8, 126 S. Ct. 2437, 2443 (2006); *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083.

To exhaust administrative remedies in Florida, a prisoner generally must: (1) file an informal grievance with a designated prison staff member on Form DC6-236 within 20 days of the incident; (2) file a formal grievance with the institution's warden on Form DC1-303; and (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33–103.005–103.007). If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code §§ 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019. If the inmate is dissatisfied with the result of the medical formal

grievance (for example, if it is denied), the inmate is authorized to appeal to the Central Office. *Id.* §§ 33-103.007(1), 33-103.008(2).

An inmate may bypass the formal grievance step and file a direct grievance with the Central Office if the grievance is an emergency grievance or a grievance concerning reprisal, protective management, admissible reading material, sentence structure (release date calculations), inmate banking, sexual abuse, or a violation of the Health Insurance Portability and Accountability Act ("HIPPA"). *See* Fla. Admin. Code § 33-103.007(6)(a). If an inmate is filing a direct grievance, he must state at the beginning of the grievance that the grievance concerns either an emergency or one of the other issues that is properly addressed in a direct grievance. *See id.*, § 33-103.007(6)(a)1. The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievance steps, except in the case of a HIPPA violation or sexual abuse grievance. *See id.*, § 33-103.007(6)(a)2.

If the grievance is a direct formal grievance, it must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from: (1) the date of the response to the informal grievance; or (2) the date on which the incident or action being grieved occurred. *See* Fla. Admin. Code § 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, § 33-103.011(3)(b). In the

event that an inmate feels that the grievance has not been satisfactorily resolved during the formal grievance procedure, the inmate may submit an appeal to the Office of the Secretary ("Central Office"). *See id.*, § 33-103.007(1).

Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *See* Fla. Admin. Code § 33-103.011(1)(c). The Central Office must respond to the grievance appeal within 30 calendar days from the date of receipt of the grievance. *See* Fla. Admin. Code § 33-103.011(3)(c). Unless the inmate has agreed in writing to an extension of the deadline for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code § 33-103.011(4).

The grievance procedure provides for an extension of the time frames imposed upon inmates as follows:

> (2) An extension of the time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

Fla. Admin. Code § 33-103.011(2). The deficiencies cited in Rule 33-103.014 include:

(e) The formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed pursuant to subsection 33-103.006(3), F.A.C.

(f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

(g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.;

(h) The direct grievance to the Office of the Secretary was not received within 15 calendar days of the date that the incident or action being grieved occurred; or

(i) The grievance appeal was not received within 15 calendar days from the date of the response to the formal grievance.
. . . .

(o) The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level.

Fla. Admin. Code § 33-103.014(1).

An inmate who has a grievance returned to him for reasons stated in § 33-103.014(1)(f), (g), or (o) may re-file utilizing the proper procedure or correct the stated deficiency and re-file if upon receipt of the notification the filing is within allowable time frames. *Id.* § 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order for him to receive administrative review of his

complaint he must correct the defects and resubmit the grievance within the time frames set forth in § 33-103.011, unless instructed otherwise in the grievance response. *Id.* Instructions to resubmit are not necessary if a grievance is returned for reasons stated in paragraphs (1)(e), (h), or (i). *Id.*

Additionally, all informal and formal grievances must be filed at the institution or facility to which the inmate is "presently assigned," meaning where the inmate is housed at the time he files the grievance. *See* Fla. Admin. Code § 33-103.015(4). When a grievance concerns an issue that occurred at another location, the staff at the inmate's then current location addresses the grievance. *See id.* Final resolution of the grievance is the responsibility of the warden at the institution where the inmate is then assigned, but direct contact with outside staff may be necessary in resolving the grievance. *See id.*

Defendants May, Mayo, Supervisor Baker, Loper, Burdick and Cooper contend that Henry failed to exhaust his administrative remedies prior to bringing this action. (Doc. 30 at 9-10; Doc. 39 at 4). Specifically, they argue that Henry failed to file a formal grievance in accordance with the Florida Administrative Code. *See Chandler*, 379 F.3d at 1288 (citing Fla. Admin. Code §§ 33–103.005-103.007).

In his response to defendants' motion to dismiss, Henry does not argue that he exhausted his administrative remedies. Instead, he contends that he "substantially complied." (Doc. 41 at 1-2, ¶ 4-6). Specifically, Henry states that he filed an *informal*

grievance, which was denied, and then he appealed this denial. (*Id*. at 1, ¶ 4). He additionally alleges that the FDOC transferred him to another prison to disrupt the grievance process and prevent him from "perfecting his grievance." (*Id*. at ¶ 6). Notably, Henry does not specify: (1) which of the Defendants (if any) ordered him transferred; (2) when he was transferred; (3) where he was transferred; or (4) how this transfer prevented him from exhausting his administrative remedies.

Regardless, contrary to Henry's argument that his transfer precluded him from "perfecting his grievance," Florida administrative law affords inmates who are transferred to another facility an opportunity to file grievances. Florida regulations allow inmates to file informal and formal grievances at the institution or facility to which an inmate is "presently assigned," meaning where the inmate is housed at the time he files the grievance. *See* Fla. Admin. Code § 33-103.015(4). The staff at the inmate's then current location are authorized to address such grievances. *See id*. Thus, a transfer of an inmate to another facility does not prevent an inmate from filing a grievance, even if the grievance relates to conduct that occurred at a different facility. Furthermore, Henry clearly was aware of this rule insofar as he cited it in his second informal grievance. (Doc. 39-1 at 2).

Therefore, even assuming that the FDOC transferred Henry with the intent to thwart his perfecting a grievance, this could not have precluded him from exhausting his remedies. Indeed, Henry filed an informal grievance and an appeal *after* the alleged "retaliatory transfer." (Doc. 39-1 at 2-3). This unequivocally demonstrates Henry's ability to file grievances and appeals even after his transfer. His transfer clearly did not interfere with his ability to exhaust his administrative remedies.

As mentioned above, on January 16, 2017, Henry filed only an *informal* grievance. (Doc. 39-1 at 1). In that grievance, Henry did not mention any of the Defendants. Interpreted generously, this informal grievance merely complains that Henry should not have been assigned to work on a mower in light of his "low blood sugar." (*Id.*). The grievance makes no allegation of deficient medical care after the accident. (*Id.*). In any event, the FDOC denied the grievance because it concluded that the lawnmower sliding down a hill had nothing to do with reduced blood sugar. (Doc. 39-1 at 1).

On February 17, 2017,[5] Henry filed a second *informal* grievance. (Doc. 39-1 at 2). In that informal grievance, Henry complained only about Defendants Loper, Rowe, and Pride, and suggested that they were merely negligent. (*Id.*). He did not claim that these Defendants were deliberately indifferent, did not mention any other

---

[5] The grievance is dated "2/17/16," but the undersigned presumes that Henry meant the year 2017 insofar as the grievance references events that occurred in November 2016.

Defendants, and did not claim that he received deficient medical care. (*Id.*). The FDOC rejected this grievance because it was untimely: it was filed on February 17, 2017, but complained about the incident that occurred on November 23, 2016, *more than two months prior.* (Doc. 39-1 at 2).

On February 22, 2017, Henry appealed the denial of his February 17 grievance to the FDOC. (Doc. 39-1 at 3). In his appeal, Henry argued that his untimeliness should be excused because he was in the infirmary for five days and because he had "tried to resolve the problem on my own." (*Id.*).[6] The FDOC denied this appeal for failure to include a copy of his formal grievance or explain why he did not file a formal grievance. (Doc. 39-1 at 4).  As stated by the FDOC:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-104, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance file at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance procedure.

(Doc. 39-1 at 4).

In Florida, generally a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with

---

[6] In his complaint, Henry alleged that he was in the infirmary for only four days. (Doc. 13 at 8).

the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See Chandler*, 379 F.3d at 1288 (citing Fla. Admin. Code §§ 33–103.005-103.007). If an inmate is filing a medical grievance, which is the case here, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance, submitted on Form DC1-303, at the institutional level. *See* Fla. Admin. Code §§ 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019.

Here, Henry never filed a formal grievance related to the events at issue, and thus failed to exhaust his administrative remedies. (Docs. 39-1, 39-2, 39-3). Henry was statutorily authorized to bypass filing an informal grievance, but there is no regulation that excuses his failure to file a formal grievance. *See* Fla. Admin. Code §§ 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019.

Additionally, the statute of limitations for filing a formal grievance is 15 calendar days from: (1) the date of the response to the informal grievance: or (2) the date on which the incident or action being grieved occurred, if the grievance is a direct formal grievance. *See* Fla. Admin. Code § 33-103.011(1)(b). FDOC denied Henry's informal grievance (dated January 16, 2017) on January 25, 2017. (Doc. 39-1 at 1). FDOC returned Henry's second informal grievance (dated February 17, 2017) to him on February 17, 2017. (*Id*. at 2). Therefore, the last day that Henry could have timely filed a formal grievance would have been in March 2017. Since

that deadline has expired, Henry is unable to cure the deficiencies with regard to his failure to file a formal grievance. Thus, Henry has failed to exhaust his administrative remedies. For this reason, the PLRA requires that his complaint be dismissed to the extent he failed to exhaust his administrative remedies.

### B.  Failure to State a Claim of Deliberate Indifference to a Substantial Risk of Serious Harm

As a second independent reason to dismiss Henry's complaint against them, Defendants May, Mayo, Supervisor Baker, and Loper also argue that Henry's Eighth Amendment claim of deliberate indifference to a substantial risk of serious harm failed to state a claim upon which relief may be granted. (Doc. 30 at 12-16). In addition, pursuant to the PLRA, the undersigned notes that Henry similarly failed to state a claim against Defendants Pride and Rowe.[7]

"'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.'" *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't*

---

[7] Defendants Pride and Rowe were never served with the complaint. On December 17, 2017, Magistrate Judge Gary R. Jones entered an order noting that he would not order service of Defendant Pride because Henry's complaint contained "no factual allegations suggesting that Pride could be liable to Plaintiff under § 1983 on a deliberate-indifference theory." (Doc. 15 at 1 n.1). Under the PLRA, a district court must *sua sponte* dismiss an action by an inmate proceeding *in forma pauperis* when his complaint fails to state a claim. *See* 28 U.S.C. § 1915A(b).

*of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)). Prison officials, therefore, must "take reasonable measures to guarantee the safety" of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200 (1984). "A prison official's duty under the Eighth Amendment is not to provide complete safety; it is to ensure 'reasonable safety.'" *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997) (quoting *Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982-83)). In light of this duty, a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994); *Helling*, 509 U.S. at 32, 113 S. Ct. at 2480.

A prison may require a convicted inmate to work while he is incarcerated. *Ali v. Johnson*, 259 F.3d 317, 317 (5th Cir. 2001); *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) (per curiam); *Stiltner v. Rhay*, 322 F.2d 314, 315 (9th Cir. 1963). A "prisoner has no constitutional right to a specific work assignment." *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). But there are circumstances in which prison work requirements and conditions can constitute cruel and unusual punishment. *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam); *see Hall v. Bennett*, 379 F.3d 462, 464-65 (7th Cir. 2004); *Wallis v. Baldwin*, 70 F.3d 1074, 1076-77 (9th Cir. 1995). "A prisoner's labor can constitute a condition of confinement, where the prisoner has no choice but to work in some capacity within the prison." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The Eighth

Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to perform physical labor which was beyond his strength, endangered his life or health, or caused an injury or undue pain. *Morgan*, 465 F.3d at 1045; *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987); *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983); *Ray*, 556 F.2d at 882; *Woolsey v. Beto*, 450 F.2d 321, 321-22 (5th Cir. 1971) (per curiam).

To properly allege a claim of deliberate indifference to a substantial risk of serious harm, a plaintiff must allege facts sufficient to show that:

(1) a substantial risk of serious harm to the plaintiff existed;

(2) the defendant was deliberately indifferent to that risk; and

(3) defendant's deliberate indifference to that risk of serious harm caused harm to the plaintiff.

*Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). These three elements are evaluated in part by an objective standard and in part by a subjective standard. *Caldwell*, 748 F.3d at 1099.

As noted above, to "violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 303, 111 S. Ct. 2321, 2323, 2326 (1991)). Only "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828, 114 S. Ct. at 1974. A "prison official cannot be found liable under the Eighth Amendment" for not addressing a substantial risk of serious harm "unless the official "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; s*ee Chandler*, 379 F.3d at 1289-90.

To properly allege deliberate indifference, the plaintiff must allege facts sufficient to show that the defendant: (1) actually knew that the plaintiff faced a substantial risk of serious harm; and (2) that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *Lane*, 835 F.3d at 1308; *Caldwell*, 748 F.3d at 1199; *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007). "'[D]eliberate indifference' is a stringent standard of fault," requiring an allegation that a government actor "disregarded a known or obvious consequence of his action.'" *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997)).

As to Henry's allegations regarding deliberate indifference, at best, Henry alleged that Defendants May, Mayo, and Supervisor Baker knew that:

- Henry had Type I diabetes.

- He was insulin-dependent.

- "[W]hen active in the sun," Henry would sweat profusely.

- This would reduce his blood sugar level.

- When the level of sugar in his blood dropped significantly, Henry would require medical attention immediately.

- His diabetes prevented him from being assigned a job that would preclude him from keeping his medication on his person.

(Doc. 13 at 6).

These allegations do not indicate that Defendants May, Mayo, and Supervisor Baker were deliberately indifferent to a substantial risk of serious danger to Henry. That is, these allegations do not indicate that these Defendants knew or could have inferred that Henry would be in serious danger on the day he suffered his injury. They merely assigned him a job that entailed working outside. According to Henry's allegations, working outside did not *per se* create a substantial risk of serious harm. For example, Henry alleges that he worked trimming trees, raking, and utilizing a blower. (Doc. 13 at 6). Those tasks apparently did not create a substantial risk of serious harm, nor did Henry allege that. Henry does not allege that May, Mayo, and

Supervisor Baker knew—or could reasonably infer from what Henry had told them about his diabetes—that:

- Henry would be operating a lawnmower on a slope.

- Henry would not ask for a break when he was feeling unwell, fatigued, or weak, but instead would continue operating the lawnmower.

- The lawnmower Henry would operate would lack tread on the tires.

- The brakes on the lawnmower were defective—or Henry would fail to deploy them—such that a crash would result.

- Henry would crash into a tree.

- Henry's hand would be between the lawnmower and a tree.

Because Henry did not allege that Defendants May, Mayo, and Supervisor Baker knew or could infer these things (or similar knowledge), he has not alleged facts indicating deliberate indifference. Henry simply did not allege that the Defendants knew or were willfully blind to these important facts. Alleging that the Defendants should have perceived a risk to Henry is insufficient. *See Farmer*, 511 U.S. at 838, 114 S. Ct. at 1979 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Merely alleging that Defendants May, Mayo and Supervisor Baker knew he had diabetes and that working in the heat could cause complications is not enough

to show that they were deliberately indifferent to a serious risk of substantial harm. "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Nam Dang by and through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Caldwell*, 748 F.3d at 1099-1100). Henry simply did not allege facts demonstrating that Defendants May, Mayo, and Supervisor Baker knew of a substantial risk of serious harm and deliberately disregarded that risk.

As to Defendants Loper and Rowe, Henry alleged even fewer facts. According to Henry's complaint, Loper and Rowe did not know that Henry suffered from diabetes nor did they know that he required any special care. "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Accordingly, any knowledge that Defendants May, Mayo, and Supervisor Baker possessed cannot be imputed to Defendants Loper and Rowe.

According to Henry's complaint, Defendant Loper simply was a lieutenant and Defendant Rowe was a sergeant, both of whom had some unspecified supervisory responsibility relating to Henry. (Doc. 13 at 7). Both Defendants Loper and Rowe were informed of Henry's accident and arrived at his location about thirty

minutes later. (*Id.*). Henry stated that this was twenty-five minutes longer than necessary, but this is a conclusory allegation insofar as Henry does not state facts in support. (*Id.*). Henry also alleges that Defendants Loper and Rowe failed to bring a first aid kit with them, which is addressed below in the section on deliberate indifference to a serious medical need. Thus, based on the allegations in Henry's complaint, Defendants Loper and Rowe had even less knowledge than Defendants May, Mayo, and Supervisor Baker. Henry failed to allege sufficient facts indicating that Defendants Loper and Rowe were deliberately indifferent to a substantial risk of serious harm. At best, Henry has alleged ignorant negligence, not deliberate indifference.

Furthermore, as to Defendant Pride, Henry similarly failed to state a cognizable claim. Defendant Pride was Henry's "instructor," and after Henry was injured, he "called out" to Defendant Pride for assistance, and Pride called Defendant Loper on the radio. (Doc. 13 at 7). As with Defendants Loper and Rowe, Henry complains that Pride did not have a first aid kit, and thus could not provide any medical assistance. (*Id.*). He also blames Defendant Pride for failing to train him on the proper use of the lawnmower. These allegations, at best, claim that Defendant Pride was negligent. They do not indicate that he knew of or was deliberately indifferent to a substantial risk of serious harm. Henry, therefore, also has failed to state a claim as to Defendant Pride.

C.   **Failure to State a Claim of Deliberate Indifference to an Inmate's Serious Medical Need**

As a second independent reason to dismiss Henry's complaint, Defendants Loper, Burdick, and Cooper also argue that Henry's Eighth Amendment claim for deliberate indifference to a serious medical need failed to state a claim upon which relief may be granted. (Doc. 30 at 5-7; Doc. 39 at 12-20). In addition, pursuant to the PLRA, the undersigned considers whether Henry has stated a claim against Defendant Rowe and Dr. Murray Baker.[8]

Because an inmate "must rely on prison authorities to treat his medical needs," prisons officials have an "obligation to provide medical care" for inmates, and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976); *see West v. Atkins*, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259 (1988) (noting that a state has "an affirmative obligation to provide adequate medical care" to prisoners). "An express intent to inflict unnecessary pain is not required." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986).

---

[8] Dr. Murry Baker was never served. On December 17, 2017, Magistrate Judge Gary R. Jones entered an order not to serve Defendant Dr. Baker because "Plaintiff's allegations suggest, at most, negligent treatment by Dr. Baker and such allegations are insufficient to state a deliberate-indifference claim under § 1983." (Doc. 15 at 1 n.1).

Rather, to prevail on an Eighth Amendment claim for providing inadequate medical care, a plaintiff must establish that a defendant showed "deliberate indifference" to his "serious medical needs." *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992) ("[T]he appropriate inquiry when an inmate alleges that that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (quoting *Wilson*, 501 U.S. at 298, 303, 111 S. Ct. at 2324, 2326). This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

To state a claim of deliberate indifference to a serious medical need, a plaintiff must allege the following facts:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

Page 29 of 38

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann.*, 588 F.3d at 1306-07; *Rodriguez*, 508 F.3d at 625; *Taylor*, 221 F.3d at 1258.

To survive a motion to dismiss for failure to state a claim, an inmate must allege facts indicating that a defendant was deliberately indifferent to his "serious" medical need. *Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1864 (2017); *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978; *Wilson*, 501 U.S. at 303, 111 S. Ct. at 2327; *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291. This "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'" *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978 (quoting *Whitley*, 475 U.S. at 319, 106 S. Ct. at 1084). Mere "accidental or inadvertent failure to provide adequate medical care to a prisoner" does not violate the Eighth Amendment. *Helling*, 509 U.S. at 32, 113 S. Ct. at 2480. Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Deliberate indifference requires "the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *see Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

As mentioned above, Henry alleged that Defendants Loper and Rowe were deliberately indifferent to his serious medical need insofar as it took them

approximately thirty minutes to reach Henry after his lawn mower accident. (Doc. 13 at 7). They also allegedly arrived without any type of medical supplies or first aid kit. (*Id*.). This is not a sufficient allegation of deliberate indifference. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *Taylor*, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need"). Henry did not allege that Defendants Loper and Rowe actually knew the extent of his injuries and, despite this knowledge, failed to quickly respond. Nothing in the complaint indicates that Defendants Loper or Rowe knew—before they arrived at the accident site—that Henry had seriously injured his finger.

Henry also did not allege that Defendants Loper or Rowe had ready access to a first aid kit or that they deliberately elected not to bring medical supplies with them. At best, Henry's allegations might suggest that Defendants Loper and Rowe were negligent. That is a far cry from deliberate indifference, and is insufficient to state an Eighth Amendment claim.

Henry's complaint also failed to state a claim in that Henry did not allege that Defendants Loper and Rowe's delay resulted in any additional harm to Henry.

According to Henry's complaint, the damage had already been done to his finger before Defendants Loper and Rowe arrived. Their delay—even assuming it was deliberate—would not have made any difference to Henry's finger, at least according to the allegations in Henry's complaint. An inmate who complains that delay in medical treatment rose to a constitutional violation must allege facts demonstrating a detrimental effect from any delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1182-84, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002); *see Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). Henry's allegations did not do so.

As to Defendants Burdick and Cooper, who were nurses, Henry made no specific allegations regarding their role in his injury or treatment. To be sure, Henry mentions "medical personnel" in various parts of his complaint. (Doc. 13 at 6-8). But that is insufficient to state a claim against Defendants Burdick and Cooper. (Doc. 13 at 6-8).

Rule 8 of the Federal Rules of Civil Procedure requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *See* Fed. R. Civ. P. 8(a)(2). This Rule is designed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (citation, ellipsis, and

quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and must meet "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966. Henry's complaint failed to apprise Defendants Burdick and Cooper—as well as this court—what these Defendants purportedly did that violated Henry's rights. A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quotation and citation omitted). Henry failed to do that with respect to Defendants Burdick and Cooper.

Furthermore, in his complaint, Henry alleges that "medical personnel" failed to: (1) schedule a follow-up appointment with Dr. Murray Baker; and (2) send Henry to a bone specialist. (Doc. 13 at 8-9). To show deliberate indifference, however, a plaintiff must allege more than a mere disagreement with the medical care he received. *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (observing that "mere disagreement with one's medical treatment is insufficient to show deliberate indifference"); *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (holding that a mere disagreement as to medical treatment "does not state an Eighth Amendment claim"). A "simple difference in medical opinion" does not state a deliberate indifference claim. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir.

2007). A medical decision not to pursue a particular course of treatment "is a classic example of a matter for medical judgment," an exercise of which "does not represent cruel and unusual punishment." *See Estelle*, 429 U.S. at 107, 97 S. Ct. 293; *see also Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Additionally, when an inmate received "medical attention and the dispute is over the adequacy of the treatment, federal courts generally are reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981); *see Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (holding that "a simple difference in medical opinion between the prison's medical staff and the inmate" as to the course of treatment does not support a claim of deliberate indifference); *Hamm*, 774 F.2d at 1575 (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference). Thus, when an inmate has received medical treatment, there will be a violation of the Eighth Amendment, only when the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

Therefore, to the extent Henry is attempting to state a claim against Defendants Burdick and Cooper for failure to treat his injury as Henry sees fit, he also has failed to state a claim. Henry stated in his complaint that medical personnel

immediately gave him a tetanus shot and an injection for pain, and prison officials took him to a hospital for treatment once the extent of his injuries had been determined. (Doc. 13 at 7, ¶ 8). Henry underwent surgery at Jackson Hospital, and upon transfer back to Apalachee Correctional West, spent four nights in the infirmary where he was treated and provided pain medication. (*Id.* at ¶ 10). Henry admits that he was given a follow-up x-ray and often was provided ibuprofen when he complained of pain. (*Id.* at ¶ 13). Henry's claim, therefore, appears to be nothing more than a difference of opinion as to the proper course of treatment.

Additionally, as to the harm Henry purportedly suffered from allegedly deficient medical care, Henry simply makes a conclusory allegation that his "finger did not heal properly" and this has caused him "chronic and substantial pain." (Doc. 13 at 8). Conclusory allegations, however, are also insufficient to state a claim for relief. To state a proper claim—in light of Henry's admission that he was being treated by the prison medical staff and at a hospital—Henry was required to state facts demonstrating that omitted medical care would have resulted in his finger healing properly and him not suffering pain. In any event, Henry has not alleged facts indicating that the medical treatment he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505.

In addition, to properly state a claim for deliberate indifference to a serious medical need, a plaintiff must allege that defendants had a subjective awareness of a serious medical need and that the defendant's response was objectively insufficient to address that need. *Taylor*, 221 F.3d at 1258. Henry utterly failed to do that here with respect to Defendants Burdick and Cooper. Indeed, he failed to state any facts indicating that Defendants Burdick and Cooper had any knowledge about Henry and his injury.

As to Dr. Baker, Henry might be alleging that Dr. Baker committed medical malpractice insofar as Henry mentions that "surgery was required" to reattach his finger, and then states that this "was not done properly."[9] (Doc. 13 at 7-8). But even if Dr. Baker's treatment was somehow deficient, malpractice is not deliberate indifference to a serious medical need. *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 292; *Farrow*, 320 F.3d at 1243. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a

---

[9]Henry did not specify how Dr. Baker's surgery was deficient or how Henry knows that the surgery "was not done properly."

valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292.

For these reasons, Henry has failed to state a claim of deliberate indifference to a serious medical need against Defendants Loper, Rowe, Burdick, Cooper, and Dr. Baker.

## IV.    Conclusion

Accordingly, for the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    The motion to dismiss filed by Defendants Assistant Warden May, Major Mayo, Supervisor Baker, and Lieutenant Loper (Doc. 39) be **GRANTED.**

2.    The motion to dismiss filed by Defendants Nurse Burdick and Nurse Cooper (Doc. 30) be **GRANTED.**

3.    Henry's complaint be **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted as to Defendants Sergeant Rowe, Johnny Pride, and Dr. Murray Baker.

4.     The Clerk of the Court be directed to close the case file.

At Panama City, Florida, this <u>25th</u> day of February 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**